| NORTH CAROLINA | ) | IN THE GENERAL COURT OF JUSTICE |
| --- | --- | --- |
| | ) | SUPERIOR COURT DIVISION |
| ORANGE COUNTY | ) | ___ CVS ___ |
| | ) | |
| RUSSELL GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| ORANGE COUNTY; JEFFREY E. | ) | (Jury Trial Demanded) |
| THOMPSON, *in his individual and official* | ) | |
| *capacities*, BRENDA BARTHOLOMEW, *in* | ) | |
| *her individual and official capacities,* | ) | |
| BONNIE B. HAMMERSLEY, *in her* | ) | |
| *individual and official capacities.* | ) | |
| Defendants. | ) | |

FILED 2020 JUL 30 A 10:10

NOW COMES Plaintiff Russell Griffin, requesting a jury trial, and alleges the following against Defendants:

## INTRODUCTION

1. This is a civil action brought to recover damages and equitable relief from Defendants on account of Defendants' deprivation of rights secured to Plaintiff Russell Griffin by the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et. seq.*, ("FMLA"). Plaintiff alleges that following his exercise of rights under the FMLA by taking leave for a serious health condition, Defendants interfered, discriminated, and retaliated against him when they terminated his employment two days after requesting medical recertification. Plaintiff seeks reinstatement to his previous position with full seniority and benefits as if he had never been terminated. He further seeks compensatory damages for loss of wages and benefits that he was suffered, as well as interest on all such amounts. Finally, he seeks liquidated damages in an amount equal to his compensatory damages plus interest.

1

2. This is also a civil action seeking to recover damages and equitable relief from Defendants on account of the wrongful discharge of Plaintiff Russell Griffin in violation of North Carolina public policy on the basis of "handicap" discrimination.

## PARTIES

3. Plaintiff is a citizen and resident of Orange County, North Carolina.

4. At all times relevant to this Complaint, Plaintiff was an "eligible employee," under 29 U.S.C. § 2611(2), having worked for Defendants for at least twelve months and for at least 1,250 hours of service during the previous twelve month period prior to requested leave. Further, at all times relevant, Plaintiff was employed at a worksite at which Defendant County employed fifty or more employees within seventy-five miles of that worksite.

5. Defendant Orange County ("Defendant County") is a body politic and corporate organized and existing as a county under the laws of the State of North Carolina.

6. Defendant County has all of the corporate powers set forth in N.C. Gen. Stat. § 153A-11, including the capacity to sue and be sued.

7. At all times relevant to this Complaint, Defendant County is an "employer" as that term is defined in 29 U.S.C. § 2611(4)(A), and is engaged in commerce or in any industry or activity affecting commerce and employing fifty or more employees for each working day during each of twenty or more calendar work weeks in the current or preceding calendar year.

8. At all times relevant to this Complaint, Defendant County regularly employs fifteen or more employees as set out in the North Carolina Equal Employment Practices Act.

9. Defendant County's government is made up of a number of departments including Asset Management Services (AMS). Defendant County maintains supervision and control over AMS.

2

10. On information and belief, Defendant Jeffrey E. Thompson is a resident and citizen of Orange County, North Carolina.

11. At all times relevant to this Complaint, Defendant Thompson was the Director of Defendant County's Asset Management Services.

12. At all times relevant to this Complaint, Defendant Thompson was an "employer" as that term is defined in 29 U.S.C. § 2611(4)(A)(ii), and acted directly or indirectly in the interest of Defendant County to employees.

13. Defendant Thompson is sued in his individual and official capacities.

14. On information and belief, Defendant Brenda Bartholomew is a resident and citizen of Orange County, North Carolina.

15. At all times relevant to this Complaint, Defendant Bartholomew was Defendant County's Human Resources Director.

16. At all times relevant to this Complaint, Defendant Bartholomew was an "employer" as that term is defined in 29 U.S.C. § 2611(4)(A)(ii), and acted directly or indirectly in the interest of Defendant County to employees.

17. Defendant Bartholomew is sued in her individual and official capacities.

18. On information and belief, Defendant Bonnie B. Hammersley is a resident and citizen of Orange County, North Carolina.

19. At all times relevant to this Complaint, Defendant Hammersley was Defendant County's Manager.

20. At all times relevant to this Complaint, Defendant Hammersley was an "employer" as that term is defined in 29 U.S.C. § 2611(4)(A)(ii), and acted directly or indirectly in the interest of Defendant County to employees.

21. Defendant Hammersley is sued in her individual and official capacities.

## JURISDICTION & VENUE

22. The Court has personal jurisdiction over the parties pursuant to N.C. Gen. Stat. §1-75.4.

23. The Court has subject matter jurisdiction of this matter, including the authority to grant equitable relief, pursuant to 29 U.S.C. § 2617(a)(2) and N.C. Gen. Stat. §§ 7A-24 and 7A-243.

24. Venue is proper pursuant to N.C. Gen. Stat. § 1-77.

## FACTS

25. From November 1997 through July 2011, Plaintiff was employed as a "Mechanic III" for Defendant County's Schools and repaired its fleet of school buses. In July 2011, Plaintiff resigned from his position in order to work for himself.

26. In or around January 2015, Plaintiff returned to full time employment with Defendant County as an Automotive Mechanic in Asset Management Services.

27. A major incentive for Plaintiff's return to employment with Defendant County was contributing to his previously accrued fourteen years of service towards the total requisite years necessary for full retirement benefits.

28. At all times relevant, Plaintiff performed his duties as an Automotive Mechanic for Defendant County in an objectively satisfactory and competent manner.

29. At all times relevant, the Director of Asset Management Services was Jeffrey Thompson ("Thompson"). Mr. Thompson also served as the supervisor of Plaintiff's immediate supervisor, William Russell.

4

30.     On July 10, 2015, Plaintiff's performance review evaluation with Defendant County and AMS indicated Plaintiff had proven himself "a vital asset to this team" and confirmed the choice to "hire him was the right one." Plaintiff's "diligence to go the extra mile and tackle jobs" was cited as saving Defendant County "thousands in repair costs to outside vendors." Plaintiff was noted as exhibiting the "qualities that every boss wants in their employees: hard working, on time, professional, knowledgeable, flexible, willing to learn, and willing to go the extra mile to get the job done." Based on the review, Plaintiff was recommended for permanent status as a mechanic with Defendant County and AMS.

31.     In January 2016, Plaintiff's performance review indicated he had done an "outstanding job his first year." Plaintiff was observed as always arriving to work on time and ready to start work shortly upon arrival. Plaintiff's most valuable contribution was noted as "his instrumental effort in organizing the early start preventative maintenance program" which "increased [AMS's] ready time for these platforms and has been the most important operational efficiency improvement for the County fleet operation." Because of Plaintiff's outstanding performance over the previous year, he was recommended for a rating of "Exceptional" with an accompanying $1,000 performance award.

32.     In January 2017, Plaintiff's performance review again indicated he had proven himself a "vital employee." Plaintiff's review specifically noted he "always notified [his supervisor] in the event he would miss work due to sickness." Plaintiff was described as "highly respected, knowledgeable, and hardworking." Because of Plaintiff's outstanding performance over the previous year, he was recommended for a rating of "Exceptional" with an accompanying $1,000 performance award.

33. On or about October 5, 2017, Plaintiff's anxiety and related high blood pressure caused him to start missing work.

34. On October 5, 2017, Plaintiff began a regiment of medication in order to treat his condition and which was prescribed by his primary care physician.

35. On October 9, 2017, Plaintiff presented to the UNC Hospital Emergency Room with a blood pressure of 277/197, a sudden onset of chest tightness, diaphoresis, and shaking.

36. On October 26, 2017, Defendant County and AMS were given a work note excusing Plaintiff from all work because of his medical condition between October 25, 2017 and October 30, 2017.

37. Immediately thereafter, despite the provision of the work note, Defendant Thompson reprimanded Plaintiff for being out sick.

38. On November 8, 2017, Plaintiff received an "Oral Warning with Written Confirmation" regarding his medically necessary absences.

39. On November 9, 2017 and December 11, 2017, Plaintiff presented to his primary care physician for increased blood pressure and anxiety.

40. Before each visit, Plaintiff notified his supervisor of his need to be excused from work due to his continuing and persistent medical condition.

41. Plaintiff was berated by Thompson each time for "calling regarding medical problems," despite being required to do so per Defendant County and AMS's policy.

42. In January 2018, Plaintiff was provided a performance review in which medically related absences were referenced as problems. Although the review stated Plaintiff "complete[d] every job with a personal integrity" it added the same had been "overshadowed by his repetitive

6

Case 1:20-cv-00794-CCE-JLW   Document 1-2   Filed 08/31/20   Page 6 of 18

absences." As a direct result of Plaintiff's medically-related absences, he was recommended for a "needs improvement" and denied a performance award.

43. On April 24, 2018, Plaintiff wrote to staff in Defendant County's Human Resources Department referencing his January 2018 review and requested that the absences cited be noted as related to a medical condition. Along with his letter, Plaintiff once more provided work notes from his medical providers for absences which coincided with treatment.

44. Also on April 24, 2018, Plaintiff's primary care physician wrote a letter to Defendants stating Plaintiff's medical condition was a legitimate concern for which he was actively seeking treatment.

45. Thereafter, Defendant Thompson advised staff to watch Plaintiff "like a hawk," implying that staff should spy on Plaintiff and report any potential missteps.

46. In May 2018, Plaintiff notified Defendant Brenda Bartholomew, Defendant County's Human Resources Director, that he was being targeted by Defendant Thompson related to his medical condition.

47. Although Defendant Bartholomew asked Plaintiff for permission to launch an investigation into Defendant Thompson, Defendant County took no actions to protect Plaintiff.

48. On June 8, 2018, Plaintiff was made to undergo a drug test at the urging of Defendant Thompson, though there had been no change in Plaintiff's behavior at work. Following the completion of the test, and with notification to Thompson, Plaintiff went home.

49. On June 28, 2018, Plaintiff completed an application for FMLA leave for his serious health condition.

50. At the time of his application, Plaintiff had been employed with Defendant County for at least twelve months, had completed at least 1,250 hours of service during the

7

previous twelve month period, and had not previously taken approved FMLA leave during the previous twelve month period.

51. Also on June 28, 2018, a Pre-disciplinary Conference was held by Defendant Thompson to discuss Plaintiff failing to return to work after undergoing the drug test on June 8.

52. Upon information and belief, other employees had not been reprimanded under similar circumstances.

53. On June 29, 2018, Plaintiff's primary care physician completed a medical certification indicating Plaintiff would need leave intermittently for his condition, estimated as full-day absences from work up to four times per month.

54. On June 29, 2018, Plaintiff's primary care physician noted on the medical certification that the duration of Plaintiff's condition was "indefinite," had commenced sometime in October 2016, and Plaintiff had recently been referred for additional treatment.

55. Plaintiff's condition was a serious health condition as defined by 29 U.S.C. § 2611 (11), requiring continuing treatment by a health care provider.

56. Plaintiff submitted the medical certification to Defendants in support of his application for leave under the FMLA.

57. Defendants approved Plaintiff's application for FMLA leave.

58. From July 9, 2018 through July 12, 2018, Plaintiff took off from work in accordance with his approved leave.

59. Defendant Thompson required Plaintiff to "call out" for each day of intermittent FMLA leave by personally speaking by telephone with supervisor William Russell two hours before the commencement of the scheduled shift at 5:00 a.m, which is 3:00 a.m.

8

60. This requirement was inconsistent with Defendant County's policy of allowing employees to "call out" within a half hour of a scheduled shift and to provide said notice with other methods of communication such as e-mail, text, or voicemail.

61. This requirement was also inconsistent with AMS's policy of allowing employees to send a text message to Plaintiff's supervisor in order to "call out."

62. Upon information and belief, these call out requirements were applied by Defendant Thompson to Plaintiff alone in order to prevent compliance and to support future dubious disciplinary actions.

63. Plaintiff attempted to comply with call out procedures by contacting supervisor William Russell at 3:00 a.m. but was unable to speak with him. Plaintiff also utilized the assistance of co-workers who conveyed to supervisor William Russell that Plaintiff would be absent in accordance with approved FMLA leave.

64. Because of unwarranted requests by Defendant Thompson and the retaliatory discipline applied to Plaintiff, Plaintiff's anxiety worsened.

65. On July 12, 2018, Plaintiff provided verbal notice to Defendant County's Human Resources Department and supervisor William Russell of the need to convert his FMLA leave on a continuous basis up to and including the full twelve weeks allowed.

66. On July 12, 2018, Plaintiff notified Defendant County's Human Resources Department that as a result of his need to take more FMLA leave, he was unable to travel by airplane to Alabama to pick up an ambulance as previously scheduled for later that month.

67. On July 12, 2018, following the notice to Defendant County and AMS, Plaintiff was given a "Notice of First Written Warning" by Defendant Thompson, citing "unsatisfactory work performance and unacceptable personal misconduct under Orange County Code of

9

Ordinances § 28-92 (d) indicating excessive absences or late reporting; failure to follow established department policies and process requiring an employee to notify a supervisor thirty minutes prior to a scheduled shift of the need to be absent; and fraud and/or dishonesty."

68. The Notice of First Written Warning also noted Plaintiff's actions "implicated" Orange County Code of Ordinances § 28-20, requiring regular attendance; notification to a supervisor within 30 minutes of a scheduled shift of an absence; and absenteeism interfering with department objectives which "may result in appropriate and reasonable disciplinary action."

69. The Notice of First Written Warning, required that Plaintiff take immediate corrective actions including the requirement that Plaintiff notify his supervisor at least two hours prior to his scheduled shift of the need to be absent and "speak with him directly." The Notice indicated that all leaves would be recorded as FMLA leave unless reported to the supervisor otherwise and Defendant County reserved the right to request medical certification from a physician if absences were "significantly different" than the previously approved four days from work each month.

70. On July 13, 2018, Human Resources Analyst Haley Thore Bizzell forwarded a trip insurance medical certification request by email to Plaintiff in order obtain a reimbursement for a previously purchased airline ticket to Alabama. The email requested that Plaintiff complete the certification no later than July 27, 2018.

71. On July 16, 2018, Human Resources Analyst Haley Thore Bizzell again emailed Plaintiff and clarified the medical certification request was to ensure a "full refund" for the flight cancellation.

10

72. On July 20, 2018, Human Resources Analyst Haley Thore Bizzell again emailed Plaintiff confirming their recent telephone call and the need for a medical certification completed by Plaintiff's doctor in order to ensure a full reimbursement for the flight cancellation.

73. On July 27, 2018, Plaintiff provided to Defendant County the requested medical certification.

74. In a letter dated July 30, 2018, Kristin Jacobson, Benefits Administrator for Defendant County, requested that Plaintiff obtain a medical recertification from his medical provider to substantiate his need to take continuous FMLA leave in excess of four days. Defendant County requested Plaintiff provide the same by August 14, 2018.

75. On August 1, 2018, Defendant Thompson terminated Plaintiff allegedly per Orange County Code of Ordinance Section 28-20(g) which states that "three consecutive working days of absence without authorized leave will be considered by the department head as a resignation from the County Service."

76. Defendant Thompson did not verbally inform Plaintiff of his termination on August 1, 2018. Rather, Thompson mailed Plaintiff a certified letter indicating the same.

77. Plaintiff's use of leave from July 9, 2018 through August 1, 2018 was protected by 29 U.S.C. § 2612(a)(1)(D).

78. On August 2, 2018, and unaware he had been terminated, Plaintiff obtained a medical recertification from his primary care physician. Specifically, Plaintiff's primary care physician completed a recertification and an addendum letter for the previously submitted medical certification indicating Plaintiff's need to take continuous leave from July 9, 2018 through August 31, 2018, secondary to severe debilitating anxiety.

11

79. On August 2, 2018, the recertification and addendum by Plaintiff's primary care physician was received by Defendant County.

80. On August 3, 2018, Plaintiff received Defendant Thompson's certified letter providing notice of his termination.

81. On August 6, 2018, Plaintiff appealed his termination through the proper appeals process and a letter to Defendant Bonnie B. Hammersley, Defendant County's Manager.

82. On August 10, 2018, Plaintiff was notified by Defendant Hammersley that the County stood by its decision to terminate his employment.

83. On information and belief, Defendant County has waived any official, sovereign, or governmental immunity to suits in tort by the purchase of one or more policies of liability insurance, by funding a reserve to cover liability claims resulting from the performance of governmental functions, by participating in a local government risk pool pursuant to N.C. Gen. Stat. § 58-23-5, or by waiving its immunities in the past, failing to assert immunities as a complete defense and bar to recovery in prior common law tort claims, or settling prior common law tort claims.

84. Defendants failed in their obligations owed to Plaintiff under 29 C.F.R. §§ 825.113; and 825.202(b); and 825.214; and 825.220.

85. Defendants stated reason for discharging Plaintiff is pretext for discrimination.

86. As a result of his termination from employment, Plaintiff has suffered significant financial losses, including, but not limited to, the loss of the benefit of employment, the loss of health insurance for himself and his family, and the loss of retirement benefits.

## Count I:

*(FMLA Interference, Retaliation, and Discrimination, 29 U.S.C. §§ 2601, et. seq.)*

87. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 86 and incorporates the same herein as though fully set forth.

88. Plaintiff was an eligible employee under the FMLA.

89. Defendants Thompson, Bartholomew, and Hammersley had supervisory authority over Plaintiff.

90. Defendants Thompson, Bartholomew, and Hammersley acted directly or indirectly, in the interests of Defendant County by participating in the decision to terminate Plaintiff's employment.

91. Defendants are employers under the FMLA.

92. During the time period from October 2017 until June 2018, Plaintiff kept Defendants informed about his serious health condition and in particular provided a letter from his primary care physician in April 2018.

93. During the time period from October 2017 until June 2018, Defendants failed and/or refused to provide Plaintiff with notice of his rights, duties, and responsibilities under the FMLA.

94. Defendants unwarranted and punitive performance reviews following Plaintiff's initial period of time out of work from July 9, 2018 through July 12, 2018 pursuant to approved FMLA leave, constitutes interference with Plaintiff's exercise of his rights under the FMLA, and discrimination and retaliation against him for his exercise of his rights under the FMLA, in violation of 29 U.S.C. § 2615(a).

95. Defendants application of different and more difficult "call out" procedures as to Plaintiff constitutes interference with his exercise of his rights under the FMLA, and

13

discrimination and retaliation against him for his exercise of his rights under the FMLA, in violation of 29 U.S.C. § 2615(a).

96. Defendants failure to allot Plaintiff at least fifteen days by which to submit a requested medical recertification constitutes interference with his exercise of his rights under the FMLA, and discrimination and retaliation against him for exercise of his rights under the FMLA, in violation of 29 U.S.C. § 2615(a).

97. Defendants' discharge of Plaintiff and their failure and refusal to reinstate him to his position as Automotive Mechanic or an equivalent position, constitutes interference with his exercise of his rights under the FMLA, and discrimination and retaliation against him for his exercise of his rights under the FMLA, in violation of 29 U.S.C. § 2615(a).

98. Following his termination by Defendant County, Plaintiff made good faith and diligent efforts to find suitable work. However, he remained unemployed for some period of time and has held different jobs to regain the earning capacity he had in his Automotive Mechanic position with Defendants.

99. In spite of his diligent efforts to find suitable work, Plaintiff has suffered a substantial loss of earnings as well as fringe benefits, and continues to suffer on-going reduced earnings and fringe benefits, compared to those that he would have received had he not been discharged from his position as Automotive Mechanic with Defendant.

100. Plaintiff is entitled to reinstatement to his previous position with Defendants, as well as compensatory damages for the loss of wages and fringe benefits that he has suffered.

101. The actions of Defendants were not taken in good faith and were taken without reasonable grounds to believe they were not in violation of 29 U.S.C. § 2615; therefore as a

result of the actions of Defendants, Plaintiff is also entitled to liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

102. As a result of the actions of Defendants, Plaintiff is further entitled to recover reasonable attorneys' fees, reasonable expert witness fees, and other costs pursuant to 29 U.S.C. § 2617(a)(3).

## Count II

### *(Wrongful Discharge in Violation of Public Policy)*

103. Plaintiff repeats and realleges by reference each and every allegation contained in paragraphs 1 through 86 and incorporates the same herein as though fully set forth.

104. Plaintiff was denied the right and opportunity of all persons in North Carolina to hold employment without discrimination or abridgement on account of "handicap" as set out in the North Carolina Equal Employment Practices Act (the "NCEEPA"), N.C. Gen. Stat. §§ 143-422.1 *et. seq.*

105. Further, the public policy of North Carolina, as expressed in the North Carolina Persons with Disabilities Protection Act, N.C. Gen. Stat. § 168A-1, *et. seq.*, makes discrimination against a "qualified person with a disability on the basis of a disabling condition" an unlawful employment practice in North Carolina.

106. Defendants Thompson, Bartholomew, and Hammersley had supervisory authority over Plaintiff.

107. Defendants Thompson, Bartholomew, and Hammersley acted directly or indirectly, in the interests of Defendant County by participating in the decision to terminate Plaintiff's employment.

15

108. Defendant Thompson regularly berated Plaintiff as a result of his serious health condition of anxiety and related high blood pressure. This included reprimanding Plaintiff for discussing his health condition related absences with Thompson despite being required to do so per Defendants County and AMS policy.

109. Defendant Thompson targeted Plaintiff based on his disability and directed co-workers to watch Plaintiff "like a hawk" for any potential missteps.

110. Defendant Thompson applied requirements to Plaintiff alone in order to prevent compliance and to support future dubious disciplinary actions.

111. Defendant Thompson held Plaintiff's mental health condition against him via written discipline; in the terms of his employment as shown in Plaintiff's January 2018 poor performance review; and by taking materially adverse job actions against Plaintiff.

112. Defendant Bartholomew sanctioned Thompson's actions by failing to address Plaintiff's concerns he was being targeted after it was brought to her attention.

113. By discharging Plaintiff because of his disabilities and his request and need for a reasonable accommodation for his disabilities, Defendants unlawfully terminated Plaintiff from his position in violation of North Carolina public policy.

114. As a direct and proximate result of Defendants' wrongful discharge of Plaintiff, Plaintiff has suffered and will continue to suffer lost wages, pain and suffering, and extreme and severe mental and emotional distress; he has incurred and will continue to incur medical expenses for treatment by health professionals and for other incidental expenses. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proved at trial.

115. Defendants' conduct was willful, wanton, and malicious, and evinced a reckless disregard for Plaintiff's rights. Plaintiff is thereby entitled to punitive damages.

16

Case 1:20-cv-00794-CCE-JLW   Document 1-2   Filed 08/31/20   Page 16 of 18

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

1. Accept jurisdiction of this action and grant Plaintiff a jury trial on all matters so triable.

2. That he have and recover of the Defendant a sum in excess of twenty-five thousand and 00/100 dollars ($25,000.00) together with interest as by law allowed from the date of the filing of this complaint pursuant to N.C. Gen. Stat. §24-5.

3. That he have and recover of Defendant a sum in excess of twenty-five thousand and 00/100 dollars ($25,000.00) with interest as by law allowed from the date of the filing of this complaint pursuant to N.C. Gen. Stat. §24-5.

4. That he be awarded punitive damages in an amount according to proof at trial.

5. Declare Defendant's failure and refusal to allow Plaintiff to return to his position of Automotive Mechanic as constituting interference with the exercise of FMLA rights, and discrimination and retaliation for the exercise of such rights in violation of 29 U.S.C. § 2615(a).

6. Pursuant to 29 U.S.C. §2617(a)(1)(A)(i), grant Plaintiff compensatory damages against Defendant for all wages, salary, bonuses, fringe benefits or other compensation that he has lost as a result of Defendant's violation of the FMLA.

7. Pursuant to 29 U.S.C. §2617(a)(1)(A)(ii), grant Plaintiff interest on all compensatory damages, calculated at the prevailing rate.

8. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), grant Plaintiff liquidated damages against Defendant, in an amount equal to the sum of the compensatory damages and the interest on those damages.

17

9. Grant Plaintiff preliminary and permanent injunctive relief, directing Defendant to reinstate Plaintiff to his position as an Automotive Mechanic or to an equivalent position, with full seniority and benefits as if he had never been terminated.

10. Grant Plaintiff his costs in bringing this action, including reasonable attorney's fees, as provided by 29 U.S.C. § 2617(a)(3).

11. Grant such further relief as the Court deems just and proper.

This the 30th day of July 2020.

/s/ Valerie Johnson
Valerie Johnson
NC State Bar # 21125
Jennifer Iliana Segnere
NC State Bar # 40061
JOHNSON & GRONINGER PLLC
300 Blackwell St., Ste. 101
Durham, NC 27701
Phone: (919) 240-4054
Fax: (888) 412-0421
jennifer@jglawnc.com
*COUNSEL FOR PLAINTIFF*